**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RODERICK DEWALT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cv-46-JCH |
| | ) | |
| PATRICK BRAUNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court upon review of a second amended complaint, filed by plaintiff Roderick Dewalt. For the reasons explained below, the Court will partially dismiss the second amended complaint, and direct the Clerk of Court to issue process upon the portions thereof that survive review pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Background**

Plaintiff is a prisoner who is proceeding *pro se* and *in forma pauperis*. He is presently incarcerated in the South Central Correctional Center. He initiated this civil action on January 11, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against 17 defendants. It appeared he wished to assert claims of excessive force, denial of medical care, and claims involving his use of the prison grievance procedure. However, he set forth his claims in a conclusory manner instead of alleging facts showing how each named defendant was directly involved in, and personally responsible for, violating his rights. He also asserted unrelated claims against numerous defendants, stemming from events that occurred over a long period of time at two different institutions: Potosi Correctional Center ("PCC"), and Jefferson City Correctional Center ("JCCC"). In consideration of plaintiff's *pro se* status, the Court gave him the opportunity to file

an amended complaint. The Court gave plaintiff clear instructions about how to prepare the amended complaint, and emphasized the importance of alleging facts in support of his claims against each named defendant. The Court also explained that plaintiff was required to follow the Federal Rules of Civil Procedure, including Rules 8, 18 and 20.

Plaintiff filed an amended complaint, but it contained the same deficiencies as the first. The Court gave plaintiff the opportunity to file a second amended complaint, and repeated the foregoing instructions. Plaintiff has now filed a second amended complaint, which the Court reviews pursuant to 28 U.S.C. § 1915(e)(2)(B).

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.  N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry.  First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 679. This is a "context-

2

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 680-82.

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

### The Second Amended Complaint

Plaintiff filed the second amended complaint against the following twenty-seven defendants: Patrick Brauner, Officer Batiste, Officer Cain, Officer Evans, Frederick Knapp, Adam Randazzo, Officer Eckhoff, Diana Larkin, Marah Nickelson, Cindy Griffith, John Doe Correctional Officer 1, 2, 3, 4 and 5, Travis Crews, Corizon Health, LLC, Dr. William McKinney, Anne Precythe, George Lombardi, John Doe Grievance Officer, John Doe Corizon Contract

Monitor, John Doe Director of Adult Institutions, John Doe Former Director of Adult Institutions, John Doe Director of Adult Institutions Designee, John Doe Correctional Supervisor I, and John Doe Correctional Supervisor II. Plaintiff alleges that Larkin and McKinney are employed by Corizon Health LLC ("Corizon"), and the remaining individual defendants are employed by the Missouri Department of Corrections ("MDOC"). Plaintiff sues the individual defendants in their official and individual capacities.

Plaintiff did not follow the Court's instructions in preparing the second amended complaint. He has filed an unnecessarily long pleading that asserts numerous unrelated claims against twenty-seven defendants based upon events that occurred at two different institutions beginning on December 27, 2016 and apparently continuing to the present date. Plaintiff sets forth his claims against the majority of the defendants by listing their names and stating, in vague and conclusory terms, that they violated his rights. He alleges as follows.

On December 27, 2016, Randazzo came to plaintiff's cell and ordered him to prepare to be moved to suicide watch/close observation status. Because plaintiff believed he was in danger of being abused by staff, he asked Randazzo to get the handheld camera. He then began packing his belongings. Randazzo opened the food port door, sprayed plaintiff with pepper spray, and said "you'll do what I tell you next time." Randazzo then left and returned with another officer who was holding a camera. Plaintiff, an asthmatic, began having trouble breathing, and asked Randazzo to "get someone from medical mental health or a CO III officer." In response, Randazzo turned off the water and ventilation to plaintiff's cell, leaving him unable to address his reaction to the pepper spray. Randazzo left and returned with defendants John Doe 1 through 5. They entered plaintiff's cell, tackled him, pinned him to the floor, and punched and kicked him. One pulled plaintiff's finger back until it snapped. Plaintiff lists the names of Corizon, McKinney, and Larkin,

4

and states they "failed to fully document, treat, diagnose all of his injuries." Plaintiff was placed in a restraint chair for six hours.

Plaintiff alleges that "due to the policy/procedure/practice/customs he was denied proper ink pens, and MO-DOC forms, while in a suicide watch/close observation cell, with which he could communicate with anyone, in violation of his First Amendment Rights, as well as to prohibit him from documenting or filing any IRR/grievance/appeal. . .". Plaintiff lists the names of Corizon, McKinney, Larkin, Griffith, Crews, "John Doe/Jane Doe(s)CS-II John Doe/Jane Doe-CS I, John Doe/Jane Doe(s) DAI Director(s)" and Lombardi and Precythe, and states they are complicit in all of the foregoing acts because they did nothing to prevent them, and/or were involved in policies, practices, procedures, or customs "that provided administrative cover/obfuscation to the adverse acts against plaintiff."

In January of 2017, plaintiff was released from the suicide watch/close observation cell. He asked Nickelson for an Informal Resolution Request ("IRR") form. He wrote to Griffith, Lombardi, Crews and "DAI/designee" about what happened, but "no other actions were taken, even to this day." Plaintiff filed health services requests and was taken to the infirmary, where x-rays were performed. His hand was splinted.

On January 28, 2017 plaintiff was unresponsive in his cell "due to complications caused by the injuries sustained as described above." Eckhoff, Brauner and Batiste entered plaintiff's cell, jumped on him, pushed his face into the concrete floor, and kicked and punched him. This caused lacerations, contusions, bruising and bleeding. They also hyperextended his finger, causing further injury. One of them grabbed plaintiff's genitals and told him to move, conduct plaintiff identifies as sexual assault. They then dragged him across the floor. Eckhoff observed all of this but did not intervene. Following this, "the defendants took turns shouting at [plaintiff] for reporting the prior

allegations of misuse of force incidents, and threatened him with further harm if he revealed the attacks, as was [their] custom at PCC." Plaintiff was then taken to the infirmary, where he received medical treatment. Afterwards, he was placed in a suicide watch/close observation cell. Upon his release in February of 2017, he asked Nickelson for IRR forms and wrote to Lombardi, John Doe DAI Director, Griffith, and Crews about what happened. Precythe received the communication sent to Lombardi. However, no action was taken.

On March 21, 2017, "Brauner, Evans, Cain and Knapp threatened to attack [him] again if he filed any more IRRS/complaints about the alleged attacks herein on his person," but plaintiff affirmed he would continue to report the incidents. These defendants then entered plaintiff's cell and beat him. Plaintiff screamed for help but Cain and Evans covered his mouth and began choking him. Plaintiff lost consciousness, and when he awoke he was being dragged across the floor. He was placed on suicide watch/close observation status. He again wrote to "Griffith; Lombardi (Precythe) and DAI Director(s)," and "Crews and Nickelson were also put on notice," but plaintiff received no response. Nickelson never held a hearing or responded to plaintiff's IRRs, and she also told plaintiff that because the incidents were being investigated, he was not allowed to continue to file reports about them.

Plaintiff wrote to several defendants, including Corizon, McKinney and Larkin, about his need for medical care and about other matters, but did not receive responses. However, plaintiff next alleges he was seen by a hand specialist via Telemed. The specialist recommended surgery. In the PCC medical department the next day, plaintiff "advised defendants Corizon Health, Dr. McKinney and Larkin of his assent to have the hand surgery recommended by the specialist." Plaintiff "was given an ultimatum by defendants at this, drop your complaints and IRRs about the incidents or you will never get the surgery needed." Plaintiff "developed a good faith belief" that

6

Corizon, McKinney and Larkin "were operating to induce plaintiff to help cover up the alleged violative acts against his rights and his person in some fashion agreed upon by the other defendants in this action." Plaintiff continued to file IRRs demanding surgery.

On August 17, 2017, plaintiff was transferred to JCCC. Upon arrival, his hand was x-rayed, and he was told it had not healed. He requested surgery "to no avail." He does not identify the person or persons with whom he spoke. Plaintiff states that it was at this time that he "became aware of the falsification of his medical records by defendants McKinney, Larkin and Corizon Health, to state plaintiff refused surgery on his hand, which has led to the continued denial of medical treatment for plaintiff's hand injuries by various medical practitioners, defendant Corizon Health has a policy and pattern of restricting, if not outright denying the treatment of inmates' serious injuries when such care is expensive." Plaintiff states he believes the defendants are acting in concert with each other to prevent him from filing complaints, and to conceal misconduct. Plaintiff's injuries "have gone undiagnosed/untreated/mistreated as part of acts designed to obfuscate the truth of the alleged violative acts against plaintiff in retaliation for acts he has a good faith belief were protected as a whistleblower." He seeks declaratory and monetary relief.

Discussion

**Defendants Brauner, Batiste, Cain, Evans, Knapp, Randazzo, and Eckhoff, and John Doe Correctional Officer 1, 2, 3, 4 and 5**

The allegations in the second amended complaint sufficiently plead individual-capacity claims of excessive force against Randazzo and John Doe Correctional Officer 1 through 5 based upon their alleged actions on December 27, 2016; against Eckhoff, Brauner and Batiste based upon their alleged actions on January 28, 2017, and against Brauner, Evans, Cain and Knapp based upon their alleged actions on March 21, 2017. Additionally, plaintiff's allegations adequately state a claim against Eckhoff for failure to intervene based upon his alleged actions on January 28, 2017.

7

The Court will therefore direct the Clerk of Court to issue process upon Brauner, Batiste, Cain, Evans, Knapp, Randazzo, and Eckhoff. Finally, the Court finds that plaintiff has alleged sufficient facts to permit John Doe Correctional Officer 1, 2, 3, 4 and 5 to be identified following reasonable discovery, and will therefore not dismiss these fictitious defendants at this time.

Plaintiff also alleges that on January 28, 2017, one defendant sexually assaulted him when he grabbed his genitals and ordered him to move. Plaintiff does not allege that the defendant made any sexual comments or engaged in any sexual banter during the touching, nor does he allege that he feared the defendant would sexually abuse him. Instead, plaintiff offers only his own speculation, supported by a conclusory statement, that the touching was sexual in nature. This Court is not bound to accept as true a conclusory statement couched as a factual allegation. *See Twombly*, 550 U.S. at 555 (citation omitted). Having carefully reviewed the complaint and liberally construed plaintiff's allegations, the Court concludes that plaintiff has failed to allege facts to demonstrate a plausible claim that the alleged touching could be construed as a sexual advancement or a sexual assault. *See Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998) (brief touches to an inmate's buttocks did not amount to sexual advancement or sexual assault when the touching was not accompanied by sexual comments or banter, and the inmate did not allege he feared sexual abuse). As the *Berryhill* Court noted, not "every malevolent touch by a prison guard [or civilian prison worker] gives rise to a federal cause of action." *Id.* at 1076 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Plaintiff's official-capacity claims against these defendants, all of whom are employed by the MDOC, will be dismissed. Official-capacity suits represent another way of pleading an action against the entity of which the officer is an agent. *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 169 (1985)).  Therefore, plaintiff's official-capacity claims

are assumed to be claims against the MDOC, a state agency. *See Walker v. Mo. Dep't of Corr.,* 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing MDOC as state agency)*; see also Cooper v. Schriro,* 189 F.3d 781, 783 (8th Cir. 1999) (per curiam). However, plaintiff has failed to allege sufficient facts to state an official-capacity claim. *See Graham*, 473 U.S. at 166. Additionally, to the extent plaintiff seeks relief other than prospective injunctive relief, his official capacity claims would be barred by the Eleventh Amendment. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

**Defendant Nickelson**

Plaintiff alleges that in approximately March of 2017, Nickelson told him he could not file any more reports about incidents that were already under investigation. It is not apparent that plaintiff's constitutional right to access the prison grievance procedure was denied, however, especially considering plaintiff's allegations throughout the second amended complaint that he used the prison grievance procedure on many occasions to grieve numerous issues. Instead, it appears that, at most, Nickelson imposed reasonable limitations on plaintiff's access to the grievance procedure after he used it to repeatedly grieve the same issues. The Eighth Circuit has recognized that reasonable limitations may be placed upon a prisoner's access to the grievance procedure if he abuses the system. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (citing *In re Tyler*, 839 F.2d 1290 (8th Cir. 1988) (per curiam)).

Plaintiff also alleges that Nickelson failed to hold a hearing or respond to his IRRs. To the extent plaintiff can be understood to assert a claim against Nickelson or any other defendant based upon the manner in which his IRRs, grievances or grievance appeals were handled, such allegations do not state a claim of constitutional dimension. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a prison official's failure to process or investigate grievances, without more,

is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate).

> **Defendants Griffith, Crews, John Doe Grievance Officer, John Doe Corizon Contract Monitor, John Doe Director of Adult Institutions, John Doe Former Director of Adult Institutions, John Doe Director of Adult Institutions Designee, Anne Precythe, George Lombardi, John Doe Correctional Supervisor I, and John Doe Correctional Supervisor II**

Despite this Court's prior instruction, plaintiff has named these individuals as defendants but has failed to allege specific facts showing how each one was directly involved in, and personally responsible for, violating his rights. Instead, plaintiff merely states he joins them as defendants or lists their names, and asserts broad, vague and conclusory allegations against them. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Moreover, by merely lumping the defendants into a group and providing no factual basis to distinguish their conduct, plaintiff has failed to give each named defendant fair notice of the grounds for the claims made against him or her. This practice results in a pleading that fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure. Plaintiff has chosen to set forth his claims against these defendants in the foregoing manner despite being repeatedly instructed against doing so. Even under the liberal construction of pleadings afforded to *pro se* litigants, this Court is not required to pore through a complaint and search for viable claims. The Court will therefore dismiss these defendants from this action.

> **Defendants Larkin, McKinney, and Corizon**

Plaintiff sets forth his claims against Larkin, McKinney and Corizon in the same manner as the defendants above. He simply lists their names and states they failed to fully document, diagnose and treat all of his injuries, denied surgery, falsified his medical records, gave him an "ultimatum" to drop his complaints and IRRs, and conspired against him.

The Eighth Amendment requires that inmates be provided with adequate medical care. *See Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). To establish that a denial of medical care rises to the level of an Eighth Amendment violation, an inmate must show that a defendant acted with deliberate indifference. *Id.* The test for deliberate indifference consists of two prongs. *Id.* First, an inmate must show that he "suffered from an objectively serious medical need." *Id.* Second, an inmate must show that the defendant knew of and deliberately disregarded that need. *Id.* Deliberate disregard is a mental state "equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* at 914–15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 839–40 (1994)).

Here, plaintiff has failed to allege facts permitting the inference that McKinney or Larkin, or any other defendant, actually knew of, and deliberately disregarded, an objectively serious medical need. Instead, plaintiff has persisted in his practice of listing the names of defendants and asserting vague and conclusory allegations against them. As discussed above, this is insufficient to state a claim under § 1983. *See Madewell,* 909 F.2d at 1208, *Martin*, 780 F.2d at 1338. Moreover, by merely lumping defendants into a group and providing no factual basis to distinguish their conduct, plaintiff has failed to give any named defendant fair notice of the grounds for the claims made against him or her. This practice results in a pleading that fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure. Additionally, nothing in the second amended

11

complaint raises the concern that plaintiff received constitutionally-inadequate medical care. In fact, plaintiff repeatedly admits he received medical treatment and testing, including x-rays, at both PCC and JCCC. Plaintiff speculates that McKinney, Larkin, and other defendants denied surgery in furtherance of a coverup or conspiracy. However, he fails to plead facts tending to demonstrate the existence of a conspiracy. Additionally, it is more likely that surgery was denied based upon the results of medical examination and testing. Therefore, the Court concludes that plaintiff's allegations do not state a plausible claim against McKinney or Larkin, and, for all of the foregoing reasons, will dismiss them from this action.

Because plaintiff's allegations fall short of alleging a constitutional violation, there can be no claim against Corizon for any unconstitutional policy, custom, or official action leading to one. *See Sanders v. Sears, Roebuck & Co*., 984 F.2d 972, 975 (8th Cir. 1993) (a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983."). Additionally, plaintiff's vague and conclusory allegations that he was injured as a result of unconstitutional policies are insufficient to state an actionable claim against Corizon. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Ulrich v. Pope County,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a *Monell* claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of the plaintiff's rights).

Accordingly,

**IT IS HEREBY ORDERED** that defendants Diana Larkin, Marah Nickelson, Cindy Griffith, Travis Crews, Corizon Health, LLC, Dr. William McKinney, Anne Precythe, George

Lombardi, John Doe Grievance Officer, John Doe Corizon Contract Monitor, John Doe Director of Adult Institutions, John Doe Former Director of Adult Institutions, John Doe Director of Adult Institutions Designee, John Doe Correctional Supervisor I, and John Doe Correctional Supervisor II are **DISMISSED** from this action**.** A separate order of partial dismissal will be entered herewith.

      **IT IS FURTHER ORDERED** that plaintiff's official capacity claims against defendants Patrick Brauner, Officer Batiste, Officer Cain, Officer Evans, Frederick Knapp, Adam Randazzo, and Officer Eckhoff are **DISMISSED.** A separate order of partial dismissal will be entered herewith.

      **IT IS FURTHER ORDERED** that the Clerk of Court shall issue process, or cause process to issue upon the second amended complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to defendants Patrick Brauner, Officer Batiste, Officer Cain, Officer Evans, Frederick Knapp, Adam Randazzo, and Officer Eckhoff in their individual capacities.

      Dated this __16th__ day of April, 2020.

\s\  Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE